## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TINA MARIE BAKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | Civil Action Number |
| **NANCY A. BERRYHILL, Acting** | ) | **5:17-cv-00921-AKK** |
| **Commissioner of the United States** | ) | |
| **Social Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Tina Baker brings this action pursuant to Section 405(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). The court finds that the Administrative Law Judge's ("ALJ") and the Appeals Council's decisions—which have become the decision of the Commissioner—are supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I. PROCEDURAL HISTORY

On October 11, 2014, Baker filed an application for a period of disability and disability insurance benefits (DIB), alleging a disability beginning on August 9, 2013. R. 228-29. After the denial of her application, R. 153, Baker filed another

application for a period of disability and DIB. R. 230-33. When this application was also denied, R. 176-80, Baker requested a hearing before an ALJ. R. 181-82. After a hearing, the ALJ denied Baker's application, finding that Baker was not disabled under the Act. R. 118-44, 84-101. This became the final decision of the Commissioner when the Appeals Council refused to grant review. R. 4-7. Baker then filed this action pursuant to § 405(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *See Richardson v. Perales,* 402 U.S. 389, 390 (1971); *Wilson v. Barnhart,* 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence, and this court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The ALJ's decision is supported by substantial evidence if it is based on "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)).

If supported by substantial evidence, the Commissioner's factual findings must be affirmed "[e]ven if the evidence preponderates against the Commissioner's findings. . . ." *Id.* (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). The ALJ's legal conclusions, however, are reviewed *de novo*, "because no presumption of validity attaches to the [ALJ's] determination of the proper legal standards to be applied." *Davis v. Shalala,* 985 F.2d 528, 531 (11th Cir. 1993). While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, the ALJ's decision must be reversed. *See Cornelius v. Sullivan,* 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological,

or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The disability must have begun on or before the date that the individual was last insured for disability benefits. 42 U.S.C. § 423 (a)(1)(A), (c)(1).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)   whether the claimant is currently unemployed;

(2)   whether the claimant has a severe impairment;

(3)   whether the impairment meets or equals one listed by the Secretary;

(4)   whether the claimant is unable to perform his or her past work; and

(5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

At step one, the ALJ found that Baker has not engaged in substantial gainful activity since the alleged onset date of disability. R. 89. At step two, the ALJ found that Baker had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, varicose veins, and obesity. R. 90. At step three, the ALJ found that Baker's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 91.

Before proceeding to step four, the ALJ found, based on the entire record, that Baker has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a); that she can occasionally lift and/or carry ten pounds and can frequently lift and carry less than ten pounds; that she cannot kneel, crouch, crawl, or climb ladders, ropes, or scaffolds; that she can occasionally balance, stoop, and climb ramps and stairs; and that she must avoid concentrated exposure to extreme temperatures, unprotected heights, and moving machinery. R. 91.

At step four, the ALJ found that Baker is unable to perform any past relevant work. R. 94. Based on Baker's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ found that jobs exist in significant numbers in the national economy that Baker can perform, including the representative occupations of inspector, waxer, and assembler. R. 95. Therefore, the ALJ concluded that Baker is not disabled as defined by the Act.

## V. ANALYSIS

Baker contends that reversal is warranted here because the Commissioner's decision is not supported by substantial evidence. Allegedly, the ALJ improperly applied a "sit and squirm" test to assess Baker's subjective testimony; failed to consult a medical expert to determine whether Baker's condition is medically equivalent to Listing 1.04; improperly rejected the opinion of Baker's treating physician, Dr. Dana Brown; and the Appeals Council erred by refusing to consider new evidence concerning alleged non-exertional impairments submitted after the ALJ's decision. Doc. 9 at 15-51. The court will address each contention in turn.

### A. Baker's Subjective Testimony

Baker contends that the ALJ erred in weighing Baker's subjective testimony of pain by engaging in sit-and-squirm jurisprudence. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The claimant must present:

> (1) evidence of an underlying medical condition    and either (2) objective medical evidence that confirms the severity of the  alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* (citation omitted). An ALJ may discredit pain testimony if the ALJ articulates reasons for doing so and substantial evidence supports the ALJ's finding. *Wilson v.*

*Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). In making a credibility determination, however, the ALJ cannot rely on "sit and squirm" jurisprudence. *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (defining "sit and squirm" jurisprudence as when an ALJ "subjectively arrive[s] at an index of traits which he expects the claimant to manifest at the hearing. If the claimant falls short of the index, the claim is denied."). On the other hand, an ALJ may properly consider a claimant's appearance and demeanor, among other criteria, in weighing the claimant's testimony. *See Norris v. Heckler*, 760 F.2d 1154, 1157-58 (11th Cir. 1985).

At the hearing, Baker testified that she has "constant pain that goes down into my lower back and to my leg," R. 126, and that she experiences chronic neck pain, edema, swelling, and constant numbness and tingling in her legs, shoulder, arms and hands, R. 126, 136. According to Baker, on a normal day, her back and leg pain is an eight out of ten, and her neck pain is a ten out of ten. R. 126-7. To cope with the pain, Baker takes various medications and elevates her leg every hour. R. 127-8. As it relates to her daily activities, Baker testified that she does light housework, washes the dishes, does light laundry, goes to church activities on the weekend, and goes grocery shopping with her husband's assistance. R. 128-9. She testified also that she drives three times a week for doctor's appointments and "children's activities," such as transporting her daughter to and from violin lessons,

and that she has problems driving more than thirty minutes because she needs to elevate her legs. R. 138-9. She further testified that she is only able to sit for ten minutes, that she can only stand in place for five minutes, and that she can only walk for five minutes before stopping, that the swelling in her leg causes fatigue, and that she experiences daily muscle spasms in her lower back. R. 130, 132, 135.

The ALJ found in part that Baker's statements regarding the severity of her impairments were inconsistent with her behavior. *See* R. 92 (stating that although Baker's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [Baker's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible . . ."). The ALJ explained:

> For instance, the claimant testified that she can only sit for 5 to 10 minutes at a time. Conversely, she testified that she can drive up to 30 minutes at a time. The undersigned also notes the claimant sat through the entire hearing of approximately 45 minutes and she never requested to stand. Moreover, she did not mention that she needed to shift positions in her chair until approximately 35 minutes after the hearing started.

R. 93. The ALJ's statements reflect the type of "sit and squirm" jurisprudence that is forbidden in the Eleventh Circuit. *See McRoberts v. Bowen*, 841 F.2d 1077, 1081 (11th Cir. 1988) (holding that an ALJ may not comment on the fact that a claimant "did not appear in pain."). Contrary to the Commissioner's contentions, doc. 10 at 19-20, these statements are not mere observations but are "clinical judgments

about the presence of pain based upon a short one-time observation of the plaintiff at the hearing." *Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1250-51 (N.D. Ala. 2003).

Nevertheless, "when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005). Thus, although the ALJ's remarks on Baker's behavior during the hearing were erroneous, there is no reversible error where, as here, the ALJ's ultimate finding was properly supported by substantial evidence. *See Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 917-18 (11th Cir. 2015) (finding that the ALJ's discussion of inconsistent statements concerning the plaintiff's alcohol consumption were harmless, "even if erroneous," because substantial evidence supported the credibility finding). A review of the record shows that the ALJ properly cited and relied on other reasons for finding Baker's testimony "not entirely credible." *See* R. 92-93; *Wilson*, 284 F.3d at 1225. Specifically, the ALJ pointed to medical records documenting Baker's pain in her neck, back, and legs; Baker's gap in treatment for over one year; the opinion of Dr. Gregory Mortimer; and Baker's testimony about her daily activities. R. 93-94.

As the ALJ noted, multiple medical records cast doubt on Baker's testimony as to the severity of her back pain. R. 93. For example, MRIs from 2012 and 2014

revealed no evidence of cord compression and no acute abnormality of the lumbar spine, respectively. R. 442, 666. Moreover, imaging of Baker's cervical spine in August 2015 indicated no acute cervical spine fracture or alignment and only mild degenerative disc disease. R. 738. And, an x-ray of Baker's lumbar spine in October 2015 also reflected no significant abnormalities. R. 753.

The record also reveals signs of improvement and complaints of pain that varied in their severity, further substantiating the ALJ's conclusion. Following Baker's August 2013 ablation of her left leg, Baker reported pain and swelling. But by October 2013, Baker was reporting pain but no swelling, and Dr. Eric Hager reported that Baker was "improving slowly." R. 445, 574. By November 2013, Baker's pain was reportedly improving, although she was walking with a cane. R. 569. In December 2013, Dr. Steven Leers reported that Baker's radiofrequency ablation "has done well and the medial thigh issue has resolved and is asymptomatic," that there were no musculoskeletal issues, and that Baker reported she did not experience any physical difficulties affecting her ability to complete daily activities. R. 598, 602-3. By January 2014, Baker reportedly experienced "some improvement" in her pain and no longer required a cane to walk. R. 563. By May 2014, Baker's left leg pain was "near 50% better" and "near complete resolution while on the [steroid] medications." R. 668.

The ALJ also found significant that Baker did not obtain treatment from June 18, 2014 until August 29, 2015, a factor that the ALJ reasonably concluded undercut Baker's credibility as to the alleged severity of her impairments. R. 92; *see Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) (noting that an 18-month gap in treatment supported the ALJ's credibility finding). Moreover, as the ALJ noted, Baker did not report any arm numbness, leg numbness, or associated weakness at her subsequent hospital visit on August 29, 2015 for neck pain. R. 92, 736.[1] This fact suggests that Baker's alleged symptoms were not as persistent as she alleged.

Additionally, the ALJ relied on the opinion of Dr. Mortimer, whose findings further contradict Baker's testimony. R. 94. Dr. Mortimer concluded that Baker "has described daily activities that are not significantly limited" based on her reports that she could drive, do some shopping and household chores, and has received treatment for her alleged symptoms that has been "fairly successful." R. 163. Moreover, Baker's own testimony of her daily activities further undermines the alleged severity of her impairments: Baker testified that she runs errands for

---

[1] The ALJ erroneously stated that this hospital visit occurred in September 2015. R. 92, 736. This error does not negate the ALJ's valid inference that the medical notes reflect an inconsistency with Baker's testimony alleging disability. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding that the ALJ's erroneous statement that plaintiff was "closely approaching advanced age" was harmless because the ALJ correctly applied the vocational factors for those approaching "retirement age").

her children, performs household tasks, drives, goes shopping, and regularly attends church activities. R. 94, 138, 128-9. Baker's function report from June 15, 2014 further states that she gets her children from school, prepares meals, prepares her children for school and bed, and shops with her family. R. 310, 312.

Finally, the ALJ relied on an inconsistency in Baker's testimony concerning her travel to Pennsylvania, stating:

> The claimant also testified that she recently returned from seeing her treating physician in Pittsburgh, Pennsylvania, in October 2015, and she can return to seeing this treating source as needed. Given the travel distance from Pittsburgh, Pennsylvania to Athens, Alabama, whether driving or flying, an individual would engage in extended periods of sitting, which is contrary to the claimant's alleged limitations.

R. 93. Baker objects to this reasoning as erroneous speculation. Doc. 9 at 39-41. The ALJ did not err, however, by inferring that an individual with Baker's alleged conditions—difficulty driving more than thirty minutes and sitting more than ten minutes at a time—would be unlikely to engage in the "extended periods of sitting" necessary to travel to Pittsburgh. *See* R. 130, 138-9; *see Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963) (finding that an ALJ may properly draw inferences supported by substantial evidence). Thus, the ALJ reasonably concluded that Baker's testimony was contradictory, which further undermined Baker's credibility.

## B. Medical Opinion Concerning Equivalence to Listing 1.04

Baker contends that the ALJ erred by failing to obtain and consider an opinion from a medical consultant as to whether Baker's impairments "equaled" Listing 1.04 when considered in combination with her obesity. Doc. 9 at 17-24; Doc. 11 at 1-11.[2] At step three of the sequential evaluation process, Baker has the burden of showing that her impairments meet or equal a listing in Appendix 1. *See Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). To "equal" a listing, Baker's impairments must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(c). The ALJ "is responsible for deciding the ultimate legal question whether a listing is met or equaled." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996).[3] In particular, "when determining whether an individual with obesity has a listing-level impairment or combination of impairments . . . adjudicators must consider any additional and cumulative effects of obesity." 20 C.F.R. § 404, Subpart P, Appendix 1.00(Q) (2015).

---

[2] Baker does not dispute the ALJ's finding that her impairments do not meet Listing 1.04. *See* Doc. 9 at 18-24; Doc. 11 at 1-11.

[3] On March 27, 2016, SSR 17-2p rescinded and replaced SSR 96-6p, the ruling concerning determinations of medical equivalence and consideration of consultative medical opinions. SSR 17-2p, 2017 WL 5180304, at *1 (Mar. 27, 2017). SSR 17-2p requires that an ALJ's finding of medical equivalence be based on one of three types of evidence contained in the record. *Id*. at *2. SSR 17-2p does not apply retroactively, and when reviewing a final decision in a claim for DIB, the court reviews the decision using the rules that were in effect at the time of the decision. *See Hargress v. Soc. Sec. Admin.*, 883 F.3d 1302, 1308 (11th Cir. 2018) (holding that SSR 16-3p does not apply retroactively).

Moreover, in determining medical equivalence to any listing, the ALJ must "consider the medical opinion of one or more designated physicians on an advisory basis." *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987) (citing 20 C.F.R. § 416.926(b)); *see* 20 C.F.R. § 404.1526(c). Specifically, "the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence . . . must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996); *see Andrews v. Berryhill*, No. 2:16-CV-221-SRW, 2017 WL 4227935, at *4 (M.D. Ala. Sept. 22, 2017) (finding the ALJ erred by failing to obtain and consider a consultative medical opinion on the issue of medical equivalence).

Here, the ALJ properly obtained and considered the medical opinion of at least one designated physician on the issue of medical equivalence to Listing 1.04. Prior to the ALJ's decision, Dr. Paul Reardon and Dr. Mortimer both submitted into evidence signed Disability Determination and Transmittal forms based on their review of Baker's medical records. R. 145-53; R. 154-67.[4] In their Disability

---

[4] The Disability Determination and Transmittal Forms electronically signed by Dr. Reardon and Dr. Mortimer are SSA-831-U3 forms. R. 153, 167. Baker contends that these forms do not constitute the type of medical opinion evidence necessary to satisfy SSR 96-6p. Doc. 11 at 9. SSR 96-6p states:

> "The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness)

Determination Explanations, both Dr. Reardon and Dr. Mortimer noted that they had considered Listing 1.04 and concluded that Baker was not disabled. R. 148, 152, 160, 165. Contrary to Baker's contentions, doc. 11 at 8, both doctors also explicitly considered Baker's impairment of obesity in combination with her other impairments. Dr. Reardon wrote,

> The medical evidence establishes a medically determinable impairment of degenerative disc disease of the cervical spine, superficial thrombophlebitis of the left leg, hypertension, history of bilateral varicose veins of the legs s/p radiofrequency ablation, *morbid obesity* and a history of asthma.

R. 150 (emphasis added). Moreover, Dr. Mortimer's detailed analysis of Baker's medical records through May 13, 2014 notes that multiple exam results indicated Baker was "morbidly obese." R. 158-60. Dr. Mortimer also cites these results, as well as Baker's other physical impairments, as evidence supporting his findings concerning Baker's exertional and postural limitations. R. 161-62. Based on these

---

> ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained at the first two levels of administrative review."

SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). The language of SSR 96-6p indicates that signed SSA-831-U3 forms are sufficient to ensure the required consideration of medical equivalence by a designated physician or psychologist. *See Vinson v. Colvin*, No. 2:15-CV-477-TFM, 2016 WL 676418, at *5 n.8 (M.D. Ala. Feb. 18, 2016) (noting that signed SSA-831-U3 forms satisfy SSR 96-6p).

notes and findings, Dr. Reardon's and Dr. Mortimer's analyses constitute medical opinions by designated consultative physicians on the issue of medical equivalency. *See* 20 C.F.R. § 404.1526(c).

Baker further argues that "the ALJ does not in her opinion cite or rely upon either of the opinions [of Dr. Reardon or Dr. Mortimer]." Doc. 11 at 7. To the contrary, the ALJ cited Dr. Mortimer's opinion and afforded that opinion "great weight" because of its consistency with Baker's medical history. R. 94. Regardless, in determining whether a claimant's impairments meet or equal a listing, the ALJ need not "mechanically recite the evidence leading to her determination. There may be an implied finding that a claimant does not meet a listing." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). Here, proper consideration is evident from the ALJ's explicit rejection of Baker's argument that her "obesity, in combination with her back impairment, would medically equal listing 1.04[]" and the ALJ's subsequent discussion of the medical evidence. R. 91, 92-94; *see Prince v. Comm'r of Soc. Sec.*, 551 F. App'x 967, 971 (11th Cir. 2014) (finding no error where the ALJ discussed the medical evidence and generally concluded the claimant did not meet any listing).

Finally, Baker contends the ALJ erred by stating that, "[t]here is no opinion from an acceptable medical source as defined in 20 CFR 404.1513(a), as is required to meet or medically equal . . . listing [1.04]." R. 91. While the absence of

a medical opinion cannot be the sole basis for an ALJ's finding, the ALJ did not rely solely on this absence in finding no disability. *See Clyburne v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 892, 894 (11th Cir. 2014) (citing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988)) (finding that the ALJ did not base his RFC determination solely on a physician's silence). As noted above, the medical findings of Dr. Reardon and Dr. Mortimer—the latter of which the ALJ assigned "great weight"—substantiate the ALJ's conclusion that Baker's impairments in combination did not "equal" Listing 1.04.

In addition, the medical records provide substantial support for the ALJ's conclusion. The records indicate that Baker has been obese since at least October 22, 2012, almost a year before the alleged onset date. R. 374.[5] After the alleged onset date, although Baker complained of leg and back pain on multiple medical visits, *see* R. 389-472, Dr. Eric Hager noted on October 9, 2013, November 7, 2013, and January 8, 2014 that Baker's pain had improved. R. 574, 569, and 563. On April 19, 2014, Dr. Michael Goldberg noted that there was "no acute abnormality of the lumbar spine" and only "mild degenerative changes" based on an MRI. R. 666. Later, after an initial admission to the Athens-Limestone

---

[5] On October 22, 2012, Baker weighed 125.0 kilograms and was 1.677 meters tall, making her Body Mass Index 44.4 and establishing her obesity under the Guidelines at that time. *See* R. 374; SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002) (the Clinical Guidelines of the National Institute of Health, which provide guidance in disability determinations, state that a BMI of 30.0 or above is "obese.").

Emergency Department for neck pain on August 29, 2015, Baker was discharged the same day and described as "stable" with a pain rating of zero out of ten. R. 745. Medical notes from that date also state that Baker did not have neck spasms or swelling and had normal range of motion. R. 737. These medical records, in combination with the medical opinions of Dr. Reardon and Dr. Mortimer, provide substantial evidence to support the ALJ's finding that Baker's obesity, in combination with her other impairments, does not medically equal Listing 1.04. *See Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483-84 (11th Cir. 2012) (affirming the ALJ's finding that the claimant's obesity and arthritis did not meet or equal a listing where medical records reflected only mild-to-moderate limitations and improvement in symptoms).

### C. Dr. Brown's Opinion

Baker also contends that the ALJ erred by assigning "little weight" to Dr. Brown's opinion that Baker has no capacity to work. Doc. 9 at 24-37; doc. 11 at 15-24. An ALJ must consider multiple factors in determining how much weight to assign to a physician's opinion, including whether the doctor examined the claimant, whether the doctor treated the claimant, the evidence the doctor presents to support her opinion, and whether the doctor's opinion is consistent with the record as a whole. 20 C.F.R. § 404.1527(c). A treating physician's opinion is generally entitled to more weight than that of a non-treating physician, and an ALJ

must provide good reasons for the weight given to a treating doctor's opinion. 20 C.F.R. § 404.1527(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) ("Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.'") (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). However, an ALJ may discount a treating physician's opinion when it is conclusory, the physician fails to support her opinion with objective medical evidence, the opinion is inconsistent with the medical record as a whole, or the evidence otherwise supports a contrary finding. *See* 20 C.F.R. § 404.1527(c); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Moreover, although a physician's opinion is relevant evidence, "[a] claimant's [RFC] is a matter reserved for the ALJ[] . . . and while a physician's opinion on the matter will be considered, it is not dispositive." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) (citing 20 C.F.R. § 404.1527(d)(2)).

Here, the ALJ assigned "little weight" to Dr. Brown's opinion that Baker had no capacity to work, explaining that this opinion was "inconsistent with the evidence considered as a whole." R. 94. Baker contends the ALJ erroneously failed to "state how the opinion of Dr. Brown is inconsistent with the record as a whole." Doc. 9 at 24. The court disagrees.

First, it is worth noting that Dr. Brown's opinion as to Baker's work capacity is not a medical opinion entitled to substantial weight. *See* 20 C.F.R. § 404.1527(d)(1), (3); *Hutchinson v. Astrue*, 408 F. App'x 324, 328 (11th Cir. 2011) (finding that an opinion about whether the claimant "could hold a job is a vocational opinion, not a medical one" and is a "question reserved to the ALJ"). Second, the ALJ's analysis of Baker's RFC and discussion of Baker's medical records provide sufficient explanation as to how Dr. Brown's conclusion is inconsistent. *See* R. 92-94. For instance, as noted above, multiple medical reports in 2013 and 2014 by treating physician Dr. Hager indicate gradual improvement to Baker's alleged symptoms. *See supra* Section V-A; R. 445, 574, 569, 598, 602-3, 563, 668.

Third, Dr. Brown's opinion that Baker cannot work came in a fill-in-the-blank form and is conclusory: Dr. Brown circled "None" in response to the prompt "Work Capacity" and provided no comments to substantiate his conclusion. R. 660. Conclusory statements by physicians are not entitled to considerable weight, particularly where they are contradicted by evidence from the record. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); *Macera v. Barnhart*, 305 F. Supp. 2d 410, 419 (D. De. 2004) (citing 20 C.F.R. § 404.1527(e)(1), (3)) ("It is well-established that a physician's conclusory

statements that a claimant is 'disabled' or 'unable to work' are not binding on the Commissioner, and the Commissioner is not required to give special significance to the source of such an opinion."). Thus, the ALJ properly discounted Dr. Brown's conclusory opinion with respect to Baker's work capacity in assessing Baker's RFC.

### D. The Appeals Council's Rejection of New Evidence of Baker's Non-Exertional Impairments.

Baker further contends that the Appeals Council improperly rejected new relevant, material evidence indicating that Baker experienced the non-exertional impairments of numbness and tingling in her hands and legs. Doc. 9 at 44-51. Generally, a claimant may present new evidence in support of her application at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.900(b)). The Appeals Council must review a case if the claimant submits additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and if "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). "New evidence is chronologically relevant if it 'relates to the period on or before the date of the ALJ's hearing decision.'" *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (quoting 20 C.F.R. § 404.970(b), 416.1470(b) (2016)).

"Evidence is material if a reasonable possibility exists that the evidence would change the administrative result." *Id.* (citing *Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015)).

The Appeals Council did not consider treatment notes from SportsMed Orthopaedic Surgery and Spine Center, dated May 6, 2016 to August 25, 2016, and Crestwood Medical Center, dated August 10, 2016 to August 28, 2016, explaining that these records concerned developments after the ALJ's decision. R. 5. The records indeed concern Baker's treatment after the ALJ's decision. *See* R. 11-78.

The only statement in these notes that Baker contends relates back to the period prior to the ALJ's decision is a single entry by Dr. Javier Reto that reads: "I reviewed a cervical MRI report dated approximately 4 years ago which states Baker had a disc protrusion at C5-6 posteriorly, and a moderate-sized disc herniation at C6-7 with a protrusion centrally." Doc. 9 at 47-8; R. 60. This single sentence describing one report that Dr. Reto reviewed is not sufficient to establish chronological relevance. *See Hargress*, 833 F.3d at 1309. Rather, as Dr. Reto noted, his impression and plan seemed to be based on "progressively worsening symptoms and weakness," rather than symptoms that precede the ALJ's decision. *See Ring v. Soc. Sec. Admin., Comm'r*, 728 F. App'x 966, 969 (11th Cir. 2018) (finding that a doctor's evaluation related to the worsening of a condition or the onset of a new condition, and thus was not "chronologically relevant"). Moreover,

without more, this single sentence concerning Dr. Reto's review of an older MRI report does not create a "reasonable possibility . . . the evidence would change the administrative result." *See Hargress*, 883 F.3d at 1309.

## VI. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's and Appeals Council's determination that Baker is not disabled is supported by substantial evidence, and that the ALJ and Appeals Council applied proper legal standards in reaching their determinations. The Commissioner's final decision is **AFFIRMED**. A separate order in accordance with this memorandum of decision will be entered.

**DONE** the 27th day of September, 2018.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE